**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael P. Lasso,<br><br>               Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner, Social Security Administration,<br><br>               Defendant. | No. CV12-02291-PHX-DGC<br><br>**ORDER** |

Plaintiff Michael Lasso filed an application for disability insurance benefits on April 15, 2009, alleging disability from May 1, 2008. Tr. at 21. The Social Security Administration ("SSA") denied Plaintiff's applications on initial review on November 19, 2009, and on reconsideration on March 30, 2010. *Id.* Plaintiff requested and obtained a hearing, held before Administrative Law Judge ("ALJ") Diana Weaver, on July 14, 2011. *Id.* The ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. at 31. The Appeals Council denied review on August 27, 2012, making the denial of benefits the final decision of the Commissioner for purposes of judicial review. Tr. at 1-5. Plaintiff filed a motion to vacate on May 28, 2013. Doc. 11. The motion has been fully briefed. Docs. 13, 20. For the reasons that follow, the Court will grant the motion and remand for further proceedings.

**I.**  **Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**II.   Analysis.**

For purposes of Social Security benefits determinations, a disability is the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment, or (4) his residual functional capacity ("RFC") precludes him from performing his past work.[1] If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise, it proceeds to the next step. If the claimant establishes his burden through step 4, the Commissioner must find the claimant disabled unless he finds that the claimant can make an adjustment to other work. The Commissioner bears the burden at step 5 of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found at step 1 that although Plaintiff had worked for FedEx for

---

[1] RFC is the most a claimant can do with the limitations caused by his impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

approximately 10 hours a week for three weeks in December 2010, he had not engaged in substantial gainful activity since his alleged onset of disability on May 1, 2008. Tr. at 23. The ALJ found at step 2 that Plaintiff suffered from the following severe impairments: lumbar radiculitis from grade II spondylolisthesis of the lumbar spine, obesity, and bipolar disorder. *Id.* The ALJ found at step 3 that none of these impairments or the combination thereof met or medically equaled one of the listed impairments. *Id.* The ALJ found that Plaintiff had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Tr. at 25. She found that he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but should avoid ladders, ropes, and scaffolds and concentrated exposure to cold, vibration, and hazards. *Id.* Additionally, he can work independently, engaging in occasional contact with coworkers and no contact with the public. *Id.* The ALJ found at step 4 that Plaintiff would not be able to perform any of his past relevant work as a small business owner, order filler, and insurance agent, of which only the insurance agent position was sedentary. Tr. at 28. The ALJ found at step 5 that Plaintiff was capable of adjusting to other unskilled sedentary work such as assembler and addresser that existed in significant numbers in the national economy. Tr. at 30-31. The ALJ therefore concluded that Plaintiff was not disabled. Tr. at 31.

Plaintiff argues that the ALJ's determination was based on legal error because she (1) improperly rejected the medical opinions of two of his treating physicians, (2) arrived at a mental RFC that is not supported by substantial evidence and is not free of legal error, and (3) improperly rejected his subjective pain testimony. Doc. 11 at 12-25.

**A.     Medical Source Opinion Evidence.**

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). "The rationale for giving the treating physician's opinion special weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McCallister v. Sullivan*,

1   888 F.2d 599, 602 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.
2   1987)).  "If a treating physician's opinion is well-supported by medically acceptable
3   clinical and laboratory diagnostic techniques and is not inconsistent with the other
4   substantial evidence in [the] case record, [it will be given] controlling weight."  *Orn,* 495
5   F.3d at 631 (citations omitted).

6         Even when an ALJ finds that a treating physician's opinion is not entitled to
7   controlling weight, that does not mean "'that the opinion should be rejected.'"  *Id.* at 632
8   (quoting S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed. Reg. 34,490, 34,491
9   (July 2, 1996)).  According to the Social Security Administration, "'[i]n many cases, a
10  treating source's medical opinion will be *entitled to the greatest weight and should be*
11  *adopted, even if* it does not meet the test for controlling weight.'"  *Id.* (quoting S.S.R. 96-
12  2p at 4) (emphasis added).  An ALJ may reject "the treating physician's opinion, but only
13  by setting forth 'specific, legitimate reasons for doing so, and this decision must itself be
14  based on substantial evidence.'"  *Rodriguez*, 876 F.2d at 762 (quoting *Cotton v. Bowen*,
15  799 F.2d 1403, 1408 (1986)).  The ALJ can meet this burden "by setting out a detailed
16  and thorough summary of the facts and conflicting clinical evidence, stating his
17  interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725.

18        Where the treating physician's opinion is not contradicted by another physician,
19  the ALJ's reasons for rejecting the opinion must be "clear and convincing."  *Rodriguez*,
20  876 F.2d at 762; *see Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("[A]n ALJ may
21  reject a treating doctor's medical opinion, if no other doctor has contradicted it, only for
22  'clear and convincing' reasons supported by substantial evidence.") (citing *Reddick*, 157
23  F.3d at 725).  Similarly, clear and convincing reasons are required to reject a treating
24  physician's subjective judgments and ultimate conclusions.  *See Lester v. Chater*, 81 F.3d
25  821, 830-33 (9th Cir. 1996); *Embrey*, 849 F.2d at 422 ("The subjective judgments of
26  treating physicians are important, and properly play a part in their medical evaluations.
27  Accordingly, the ultimate conclusions of those physicians must be given substantial
28  weight; they cannot be disregarded unless clear and convincing reasons for doing so exist

and are set forth in proper detail.").

### 1. Dr. Eric Feldman.

Plaintiff began seeing Dr. Eric Feldman, M.D. for pain management on March 17, 2008, after seeking treatment for low back and right leg pain at the Center for Orthopedic Research and Education ("CORE") Institute in January 2008. Tr. at 257-59; 260-62. Dr. Feldman reviewed a November 2007 MRI of Plaintiff's lumber spine and the official radiologist report which showed that Plaintiff had grade I L5-S1 spondylolisthesis, bilateral spondylolytic defects, severe bilateral L5-S1 foraminal stenosis, and chronic primarily extension based axial low back pain. Tr. at 260. Dr. Feldman recommended that Plaintiff be given steroid injections and, if his pain decreased, that he participate in physical therapy. Tr. at 262.

Dr. Feldman treated Plaintiff with a series of steroid injections from April to June 2008. Tr. at 264-65; 267-69. The first of these resulted in 90 per cent improvement in Plaintiff's low back pain, but Plaintiff continued to report numbness and tingling of the right thigh. Tr. at 264-65. The second and third injections were less effective. Tr. at 269. Dr. Feldman reported that, overall, the injections gave Plaintiff "significant improvement in pain," but Plaintiff reported he was still unable to do any of his normal activities due to his pain levels. Tr. at 269.

Plaintiff saw Dr. Feldman with similar complaints in August 2008, May 2009, and December 2009. Tr. at 271-72; 273; 365. Plaintiff was unable to get insurance coverage for Dr. Feldman to order another MRI or to consider surgery. Tr. at 273; 365. Dr. Feldman prescribed Gabapentin and Percocet for Plaintiff's pain in May 2009 and renewed these medications in December 2009. *Id.* Plaintiff saw Dr. Feldman again in June 2011 and Dr. Feldman reported that he was "doing about the same." Tr. at 434; 436. Plaintiff next saw Dr. Feldman on December 12, 2011. Tr. at 436. Dr. Feldman summarized Plaintiff's complaints at that time as "severe debilitating low back and radicular leg pain" that was exacerbated by any type of prolonged physical activity or standing, and he opined that Plaintiff would be unable to work in any capacity due to his

1  inability to sit or stand for any prolonged periods without having to change position or
2  lay down to alleviate his pain.  *Id.*  Dr. Feldman completed a medical assessment of
3  Plaintiff's ability to do work-related activities on August 15, 2011, in which he opined
4  that Plaintiff was able to sit, stand, or walk less than 2 hours in an 8 hour workday, could
5  lift and carry less than 10 pounds, and could not bend, crawl, climb, stoop, balance,
6  crouch, or kneel.  Tr. at 432-33.  Dr. Feldman opined that Plaintiff's limitations due to
7  pain and fatigue were moderately severe, meaning they have a serious effect on his
8  ability to function.  Tr. at 433.
9        The ALJ gave little weight to Dr. Feldman's August 15 2011 assessment because
10 it was "not supported by the greater objective medical evidence of record."  Tr. at 28.
11 She stated the Dr. Feldman's reports failed to explain what clinical findings one would
12 expect to find from Plaintiff's alleged disability, and that it appeared that Dr. Feldman
13 relied heavily on Plaintiff's subjective complaints which she elsewhere explained were
14 not credible.  *Id.*
15       Plaintiff argues that the ALJ gave legally insufficient reasons for rejecting Dr.
16 Feldman's opinion.  The Court agrees.  The ALJ's conclusory statement that Dr.
17 Feldman's opinion was not supported by "the greater objective medical evidence of
18 record" leaves Plaintiff and the Court to guess which objective medical evidence the ALJ
19 considered.  The ALJ elsewhere noted the findings from Plaintiff's November 2007 MRI
20 showing grade I spondylolisthesis and a September 2009 radiologic exam evaluated by
21 consultative medical examiner Dr. Paul Drinkwater, M.D. showing grade II
22 spondylolisthesis (Tr. at 26, 27), but she did not indicate whether or how these findings
23 failed to support Dr. Feldman's opinion.  Further, Dr. Feldman's own statements indicate
24 that he found Plaintiff's limitations sufficiently supported by medical evidence.  Dr.
25 Feldman referred to the MRI evidence showing grade I spondylolisthesis in his
26 September 12, 2011 report in which he opined that Plaintiff would be unable to work.
27 Tr. at 436.  He also indicated in his August 15, 2011 report that the limitations noted on
28 that assessment could reasonably be expected to result from the objective medical and

1 diagnostic findings documented by himself or elsewhere in the record. Tr. at 431. Although the ALJ stated that Dr. Feldman did not explain what clinical findings one would expect to find from Plaintiff's alleged disability, it is clear that Dr. Feldman incorporated the clinical findings on record into his opinion. Moreover, "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations and citation omitted). Before discounting Dr. Feldman's opinion as unsupported by the objective medical evidence of record, the ALJ was required to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *See Reddick*, 157 F.3d at 725. Her failure to do so was legal error.

The ALJ's finding that Dr. Feldman relied heavily on Plaintiff's subjective complaints is also not an adequate reason to discount a treating doctor's opinion. "An ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) ("The fact that [a treating physician] also relied on [the claimant's] subjective complaints hardly undermines his opinion as to her functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'") (internal citation omitted). Absent controverting objective or medical opinion evidence, it was error for the ALJ to reject Dr. Feldman's opinion as relying on Plaintiff's subjective complaints where Dr. Feldman found those complaints credible and supported by objective medical evidence.

**2.     Dr. Douglas Bailes.**

Dr. Douglas Bailes, D.O. served as Plaintiff's treating physician for over 20 years. Tr. at 231. Plaintiff saw Dr. Bailes during his alleged period of disability for a rash on

1  January 7, 2011. Tr. at 426-27. Plaintiff did not complain of lower back or leg pain at
2  that time. *Id.* Plaintiff saw Dr. Bailes for follow-up on his rash on January 26, 2011.
3  Tr. at 424-25. Among Plaintiff's past and current conditions, Dr. Bailes noted that he had
4  chronic dyshydrotic eczema of the legs and hands, bilateral shoulder tendonitis in 2006,
5  chronic depression in 1998, and chronic anger. Tr. at 424. He again did not note any
6  complaints or make any findings related to Plaintiff's lower back or legs. *Id.* Plaintiff
7  made two additional visits for rash follow-up on February 8, 2011 and April 13, 2011.
8  Tr. at 420-21; 422-23. Each time, Dr. Bailes noted that he was "well appearing, well
9  nourished in no distress." *Id.*

10  On April 31, 2011, Plaintiff saw Dr. Bailes to request disability paperwork. Tr. at
11  418. He then reported his chronic lumbar pain to Dr. Bailes for the first time. *Id.* Dr.
12  Bailes again noted that Plaintiff was "well appearing, well nourished in no distress."
13  Tr. at 419. He also noted that Plaintiff had chronic lumbar radciulitus [sic], for which he
14  had failed epidural treatments in 2008, and grade I-II spondylolisthesis. *Id.* He filled out
15  the disability form and indicated that Plaintiff "is under the complete care of a specialist
16  as I have not seen him for this in the past." *Id.* Dr. Bailes opined in his medical
17  assessment of Plaintiff's ability to do work-related physical activities that Plaintiff could
18  sit, stand, and walk for less than 2 hours in an 8 hour workday, could lift and carry less
19  than 10 pounds, and could not use his feet, crawl, climb, stoop, crouch, or kneel. Tr. at
20  430. Dr. Bailes also opined that Plaintiff's medications caused moderate dizziness and
21  that the extent to which his pain and dizziness would affect his ability to work was
22  severe. Tr. at 431.

23  The ALJ gave little weight to Dr. Bailes' opinion because she found that it was
24  unsupported by his own treatment notes which stated that Plaintiff had not previously
25  come to him with complaints of back and leg pain until he came to ask for disability
26  paperwork. Tr. at 28. She explained that Dr. Bailes' opinion "relies on an assessment of
27  an impairment for which the claimant received no treatment from Dr. Bailes." *Id.* She
28  also opined that Dr. Bailes may have filled out his assessment simply to be agreeable to

Plaintiff's request, not because it was fully supported by the evidence. *Id.*

The Court finds that the ALJ gave sufficient reasons for discounting Dr. Bailes' assessment of Plaintiff's ability to do work-related physical activities. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Plaintiff asserts on the basis of Dr. Bailes' May 31, 2012 treatment notes that his assessment was well-supported by clinical findings. Doc. 11 at 18. This is because, Plaintiff argues, the notes show that Dr. Bailes reviewed his medical history, noting lumbar radiculitis and grade II spondylolisthesis, and he conducted a clinical exam which showed limited range of motion and tenderness to palpitation across his back. *Id.*; *see* Tr. at 418-19. The Court does not agree that these notes show that the ALJ erred in finding Dr. Bailes' assessment inadequately supported. Dr. Bailes' treatment notes do not indicate what medical evidence or findings he reviewed to support Plaintiff's complaints, and his physical examination showing for the first time that Plaintiff had limited range of motion and tenderness to palpitation across the back, though indicative of some level of impairment, does not support the severity of limitations Dr. Bailes included in his physical assessment, particularly where he also noted, consistent with his prior findings, that Plaintiff was well-appearing and in no distress.

Plaintiff argues that the ALJ did not support her speculation that Dr. Bailes filled out the assessment per Plaintiff's request simply to "avoid unnecessary doctor/patient tension." Doc. 11 at 19. He cites *Lester*, 81 F.3d at 832, for the proposition that an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Id.* But that is not what the ALJ did here. She found that Dr. Bailes' assessment lacked credibility because Dr. Bailes himself stated that he had never treated or even known of Plaintiff's alleged back and leg impairments until he was asked to fill out the disability assessment. The Court finds that the ALJ gave sufficiently clear and convincing reasons for discrediting Dr. Bailes' opinion.

### B. Plaintiff's Mental Residual Functional Capacity Assessment.

Plaintiff argues that the ALJ erred in assessing his mental RFC because she stated that she gave "great weight" to the opinion of consultative psychological examiner Dr. Sharon Steingard, D.O., but she ignored some of Dr. Steingard's key findings without explanation. Doc. 11 at 19-20. Plaintiff points to Dr. Steingard's findings that Plaintiff had anti-social traits but not antisocial personality disorder; had personality pathology "likely contributing to [his] problems with mood and temper[;]" he has social interaction limitations due to his described problems with authority figures, meaning he would likely do best "in a work environment where he is more independent and making his own decisions[;]" and that due to his mood cycles, "sustaining motivation and attendance at work will be a problem." Doc. 11 at 20-21; *see* Tr. 315, 316. Plaintiff argues that the ALJ's assessment that Plaintiff "can work independently, engaging in occasional contact with coworkers and no contact with the public" fails to account for all of Dr. Steingard's findings and is not harmless error because the limitations Dr. Steingard described would preclude him from regular unskilled work. *Id.* at 21.

Plaintiff cites Social Security Regulation 85-15, which explains that a "substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations" would severely limit the potential occupational base for unskilled work and support a finding of disability. SSR 85-15, 1983-1991, *Titles II and XVI: Capability to do Other Work*, 1985 WL 56850, at *4 (1985). Plaintiff also cites the Program Operations Manual System ("POMS") DI 25020.010B.3 as persuasive authority that the skills required for sustained work include the ability to maintain attendance and punctuality within customary tolerances. Doc. 11 at 21.

The Commissioner argues that the ALJ's RFC assessment, which includes that Plaintiff "can work independently, engaging in occasional contact with coworkers and no contact with the public" (Tr. at 25), sufficiently incorporates the limitations set forth in Dr. Steingard's opinion. Doc. 13 at 17. The Court agrees that it was not legal error for the ALJ to summarize the general thrust of Plaintiff's mental limitations as related to his

ability to work, and that her assessment of Plaintiff's mental RFC is not inconsistent with Dr. Steingard's more specific findings. Dr. Steingard opined that sustaining motivation and attendance at work would be a problem and that Plaintiff would have limitations due to his described behaviors and attitudes toward authority figures, but she did not quantify these limitations as "substantial" or "severe." Nor did she conclude that he would be unable to function in a work environment. She stated that socialization "is not precluded," and she concluded that Plaintiff would do best in a work environment where he could function independently and make his own decisions. Tr. at 316. The ALJ's RFC assessment, finding Plaintiff capable of unskilled independent work with limited social interaction, is sufficiently consistent with Dr. Steingard's opinion.

### C. Plaintiff's Subjective Pain Testimony.

Plaintiff testified at the hearing before the ALJ that he suffers from low back pain that radiates to his hips, thighs, knees, and left shin, and that the pain feels like somebody sticking him with "a very, very sharp knife and twisting it." Tr. at 46. He also testified that his right thigh "feels like it's on fire most of the time" and is numb. *Id.* Tr. at 46. He stated that he had received three epidural injections to relieve the pain. Tr. at 47. He stated that the first of these worked well, but the pain returned after three weeks and the subsequent treatments gave him only minimal relief. *Id.* Plaintiff tried physical therapy for a time, but he testified that it only increased his pain. Tr. at 48.

As to daily activities, Plaintiff testified that he sleeps only three to four hours a night due to pain, and he lays on the couch during the day and tries to help supervise his kids (ages 5 and 8) when his wife is busy with other work. *Id.* He gets them meals, helps them turn channels on the TV, and may take them swimming for an hour or so in the afternoons. Tr. at 49. He sometimes swims with them, and his pain stays about the same. *Id.* Plaintiff stated that he can only stand or sit in one place for 5 to 20 minutes at a time and can walk less than a block without having to stop due to pain. Tr. at 50. He stated that he can only load the top of the dishwasher and cannot do other household jobs like sweeping, doing laundry, or washing dishes because it hurts to bend or put pressure on

1 his back, and he cannot lift more than 10 pounds.  Tr. at 50-51.  He estimated that he can
2 only concentrate on something for 10 or 15 minutes because his pain distracts him.  He
3 stated that Dr. Feldman has prescribed medications for his pain that make him dizzy and
4 drowsy.  Tr. at 52-53.  He also testified that Dr. Feldman told him that the pain would not
5 go away without surgery, something Plaintiff stated he has wanted to try but has been
6 precluded from doing because he does not have insurance.  Tr. at 53, 58-59.

7        The ALJ evaluated Plaintiff's testimony using the two-step analysis established by
8 the Ninth Circuit.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Applying
9 the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that
10 Plaintiff's impairments could reasonably produce the symptoms alleged.  Tr. 25-26.
11 Given this conclusion, and because the ALJ cited no evidence of malingering, the ALJ
12 was required to present "specific, clear and convincing reasons" for finding Plaintiff's
13 testimony as to the severity of his symptoms not entirely credible.  *Smolen*, 80 F.3d at
14 1281.  The ALJ stated that the medical evidence of record greatly damages Plaintiff's
15 credibility.  Tr. at 26.  She pointed to Dr. Feldman's medical exam findings showing only
16 "mild tenderness to palpitation" of the lumbar spine, Plaintiff's ability to walk heal to toe
17 without difficulty, Plaintiff's moderate relief from epidural injections, and Dr. Bailes'
18 observations that Plaintiff had a normal gait and was well-appearing and in no distress.
19 *Id.*; *see* Tr. at 262, 264, 375.  Tr. at 26, 28.

20        Plaintiff correctly notes that an ALJ may not reject a claimant's subjective
21 complaints based solely on a lack of objective medical evidence that fully corroborates
22 the complaints (Doc. 20 at 11), but the ALJ did not make this error.  She instead found
23 that the objective medical evidence of record was inconsistent with Plaintiff's statements
24 of disabling pain and functional limitations.  Tr. at 26, 28.  Plaintiff points to objective
25 evidence to support his complaints, including the November 2007 MRI showing grade I
26 spondylolisthesis and severe bilateral neural foraminal stenosis (Tr. at 386-87), a
27 March 6, 2008 exam by Physician's assistant Janet Orozco at the CORE Institute
28 showing he had an antalgic gait and was unable to walk heal to toe due to pain (Tr. at

259), and Dr. Feldman's notation of Plaintiff's MRI results (Tr. at 262). Doc. 20 at 11. This evidence, however, does not make the ALJ's findings invalid. The medical evidence to which the ALJ pointed showing that Plaintiff suffered from mild or no apparent physical distress on a number of occasions is equally part of the record and provides a supportable basis for doubting the severity and persistence of Plaintiff's complaints. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair v. Bowen*, 885 F.2d 597 at 604 (9th Cir. 1989).

The ALJ also noted that despite Plaintiff's complaints of worsening pain, the objective medical evidence remained unchanged, and Dr. Feldman continued to provide only conservative treatment through medications. Tr. at 28. The first of these findings is not entirely accurate. Although Dr. Feldman indicated in August 2008 that Plaintiff's pain was stable (Tr. at 363) and in June 2011 that he "is doing about the same" from seven months prior (Tr. at 434), the November 2007 MRI showed that he had grade I spondylolisthesis, whereas a September 2009 radiologic exam showed grade II spondylolisthesis, indicating that Plaintiff had experienced some degeneration of his lumbar condition. Doc. 11 at 22; *compare* Tr. at 386-87 *with* Tr. at 318.

As to the conservative nature of Plaintiff's treatment, Plaintiff explains that he did not pursue more aggressive options because he did not have insurance. Doc. 11 at 22. The records support that a lack of insurance was a factor in Plaintiff's treatment, but do not support that all non-surgical approaches were ineffective or that Plaintiff or his treating doctors found that he could not otherwise get relief from his pain. The records show that Ms. Orozco discussed the possibility of surgery with Plaintiff as early as January 2, 2008, but she recommended – and he agreed – that he first try physical therapy and injection therapy. *See* Tr. at 258. In June 2008, Plaintiff decided that he wanted to consider surgery, and Ms. Orozco concurred that he should consult with orthopedic surgeon Dr. Appel but thought that if he responded well to physical therapy, surgery

1    could be avoided.  Tr. at 269.  Plaintiff met with Dr. Appel in July 2008, and Dr. Appel
2    agreed with Plaintiff's own desire to continue physical therapy for several months before
3    pursuing surgical intervention.  Tr. at 270.  Dr. Feldman agreed that Plaintiff should
4    continue physical therapy and medications, which had helped limit his pain and allowed
5    him to be more functional, at least until he had insurance to pay for injections.  Tr. at 272.
6    Dr. Feldman noted in December 2009 and June 2011 that Plaintiff wanted surgery but
7    was still waiting on insurance.  Tr. at 365, 434.  Dr. Feldman's notes from December
8    2009 indicate that Plaintiff had moderately limited lumbar flexion and extension; back
9    pain, but no leg pain; and no muscle atrophy.  Tr. at 365.  His June 2011 notes indicate
10   that Plaintiff complained of severe low back and radicular leg pain, but that he was
11   managing his pain with Percocet and was also taking Gabapentin which "does help."
12   Tr. at 434.  Dr. Feldman's notes also indicate that Plaintiff was in "no acute distress."
13   Tr. at 365, 434.  Although the evidence shows that the relief Plaintiff received from
14   epidural injections was only temporary, the record supports that Plaintiff tried and
15   received some relief and increased functionality from physical therapy and medications
16   and opted not to pursue surgery, in part for this reason.  It also supports that Plaintiff's
17   treating physicians found him on several occasions to have mild to moderate impairments
18   and to be in no acute distress.  This evidence provides additional support for finding
19   Plaintiff's allegations of constant and severe pain not entirely credible.
20         The ALJ cited to Plaintiff's reports of his daily activities as being inconsistent
21   with the alleged severity of his pain.  Tr. at 29.  Plaintiff argues, and the Court agrees,
22   that this evidence does not clearly conflict with Plaintiff's testimony of disabling pain.
23   *See* Doc. 11 at 23.  The ALJ pointed to a July 2009 function report in which Plaintiff
24   indicated that he can prepare simple meals, wipe the counter and do laundry depending
25   on pain, can drive and go shopping for food about once a week, and can manage his own
26   personal care and finances.  Tr. at 29; *see* Tr. at 175-182.  Plaintiff also stated in October
27   2007 – more than six months before his alleged onset of disability – that he spends a lot
28   of time watching his children, and the ALJ noted that this could be quite demanding.

Tr. at 29, 412. As Plaintiff points out, however, both Plaintiff and his wife described his childcare activities after his alleged onset of disability as very minimal. Doc. 11 at 23; *see* Tr. at 43, 175, 196. Plaintiff's other reported activities differ only slightly from the activities he testified to at the hearing, and none of these activities would require sustained physical exertion. In his 2009 questionnaire, Plaintiff indicated that he helped with housework such as wiping counters for only 2-5 minutes at a time. Tr. at 177. The remaining activities the ALJ cites are from a November 15, 2007 assessment and are not part of the relevant time period. Tr. at 29; *see* Tr. at 412. In sum, Plaintiff's daily activities during his alleged period of disability do not suggest a "greater functional capacity" than alleged (*Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010)) and therefore do not support the ALJ's negative credibility finding.

Finally, the ALJ found Plaintiff's testimony in October 2007 that he had quit his job as an insurance agent a year earlier because he "got tired of it" and had not yet looked for another job was damaging to his credibility. Tr. at 29. The ALJ incorrectly stated that Plaintiff resigned his insurance job for reasons unrelated to disability in 2008, not 2007. The Commissioner does not dispute this error, but argues on the basis 20 C.F.R. § 404.1529(c)(3), which states that the ALJ will consider information from a claimant's prior work record, and *Thomas*, 278 F.3d at 959, in which the ALJ considered such evidence, that a prior poor work record is nonetheless relevant to the ALJ's credibility determination. Doc. 13 at 21, n. 9. *Thomas* upheld an ALJ's negative credibility finding based in part on evidence of an "extremely poor work history," finding that this reflected negatively on the claimant's credibility as to her later-alleged inability to work. 278 F.3d at 959. Even if, as the Commissioner argues, such a finding might also be relevant here, the ALJ did not find Plaintiff's decision to leave his work in 2006 and not seek other employment for at least a year a reason to question his later claim of disability. Instead, she questioned his credibility on the erroneous assumption that he lied about his reasons for not working in 2008. This reasoning does not support the ALJ's negative credibility finding.

In summary, the ALJ gave a number of reasons for discrediting Plaintiff's subjective pain testimony, some of which were valid and some of which were not. The Court finds on the whole, however, that the ALJ gave sufficiently clear and convincing reasons for finding that Plaintiff exaggerated the severity and limiting effects of his pain. The ALJ noted evidence from Dr. Feldman's notes that medication helped relieve Plaintiff's pain and that Plaintiff's participation in physical therapy increased his functionality. She also cited to physical exams and findings of both Drs. Feldman and Bailes that Plaintiff had a normal gait, could walk heal to toe without difficulty, and was well-appearing and in no acute distress. The ALJ reasonably found that this evidence was contrary to Plaintiff's descriptions of constant debilitating pain and that his testimony was not fully credible.

**III.  Remedy.**

The decision to remand for further development of the record or for an award benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held that an action should be remanded for an award of benefits where three conditions are met: the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *Smolen* 80 F.3d at 1292.

The Court has found that the ALJ failed to give legally sufficient reasons for discrediting the August 15, 2011 assessment of Plaintiff's treating physician, Dr. Feldman, showing that Plaintiff would be unable to sustain full-time work. Plaintiff began seeing Dr. Feldman for pain management in March 2008, and Plaintiff alleges disability since May 1, 2008. As discussed in this order, Dr. Feldman examined Plaintiff on a number of occasions prior to his August 15, 2011 assessment, noting at times only mild to moderate pain and restrictions in Plaintiff's movement. The ALJ found that this evidence undercut the severity Plaintiff's subjective complaints. It is not clear, therefore,

that taking the August 15, 2011 assessment as true would require the ALJ to find Plaintiff disabled from May 1, 2008 as claimed. The credit-as-true rule applied in *Varney* and its progeny is "specifically limited to cases 'where there are no outstanding issues that must be resolved before a proper disability determination can be made[.]'" *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009) (quoting *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Because the Court finds that an outstanding issue remains as to the onset and relevant time period of Plaintiff's claimed disability even if the discredited testimony is credited as true, the Court will remand for further proceedings consistent with this order.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.
2. The case is **remanded** for further proceedings consistent with this order.
3. The Clerk is directed to terminate this matter.

Dated this 10th day of September, 2013.

_____
David G. Campbell
United States District Judge